## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

EVER WIN INTERNATIONAL          )
CORPORATION,                    )
                                )
          Plaintiff,            )
                                )
     v.                         )     Civ. Action No. 11-1104-GMS-CJB
                                )
RADIOSHACK CORPORATION,         )
                                )
          Defendant.            )

### MEMORANDUM ORDER

In this action, Plaintiff Ever Win International Corporation ("Plaintiff" or "Ever Win")

has filed a Complaint alleging patent infringement against Defendant RadioShack Corporation

("Defendant" or "RadioShack"). (D.I. 1) Presently before the Court is Defendant's motion to

stay pending *ex parte* reexamination of the lone patent-in-suit, U.S. Patent No. 6,174,075 ("the

'075 Patent"). (D.I. 10) For the reasons stated below, the Court GRANTS Defendant's motion.

## I.      BACKGROUND

Plaintiff Ever Win is a California corporation with its principal place of business in City

of Industry, California. (D.I. 1 at ¶ 1) It designs, engineers, manufactures and sells mobile

communications and consumer electronics accessories; among the devices it manufactures and

sells are Vehicle Power Adaptors ("VPAs"). (*Id.* at ¶ 7; D.I. 16, ex. B) Defendant RadioShack is

a Delaware corporation with its principal place of business in Forth Worth, Texas. (D.I. 1 at ¶ 2)

It is, *inter alia*, a retailer of consumer electronics and wireless devices, and sells such items in its

retail stores and via its Internet website. (D.I. 1 at ¶ 2; D.I. 17 at 2) Defendant is alleged to

design, manufacture and sell VPAs. (D.I. 1 at ¶ 12)

On November 7, 2011, Plaintiff filed this infringement suit seeking injunctive and

monetary relief. (D.I. 1) Its Complaint alleges that Defendant is infringing the '075 Patent by selling and having sold VPA charging units, and that Defendant has induced infringement and contributorily infringed the '075 Patent as well. (*Id.* at ¶¶ 13-14) On December 30, 2011, Defendant timely answered Plaintiff's Complaint. (D.I. 7)

On May 3, 2012, Defendant filed a request for an *ex parte* reexamination with the U.S. Patent and Trademark Office ("PTO"), challenging all seventeen claims of the '075 Patent "based on [allegedly] non-cumulative prior art that was not previously disclosed, discovered, or otherwise considered by the examiner." (D.I. 11 at 2 & ex. A) A few days later, on May 7, 2012, Chief Judge Gregory M. Sleet referred this case to me to conduct all proceedings related to discovery disputes, alternate dispute resolution, and dispositive and nondispositive motions, excluding claim construction, up to the pretrial conference. (D.I. 9) On May 8, 2012, I issued an order instructing the parties to submit a joint proposed Scheduling Order and scheduled a teleconference, pursuant to Federal Rule of Civil Procedure 16(b), for May 30, 2012.

On May 24, 2012, Defendant filed a motion to stay the proceedings in this case, pending reexamination. (D.I. 10) In that filing, Defendant asserted that "a stay of the proceedings is the most effective means of ensuring judicial economy and avoiding unnecessary litigation," because the PTO's determination "could render much of the lawsuit moot," particularly given that "this case is at its inception." (D.I. 11 at 1) Plaintiff timely opposed Defendant's motion, arguing, *inter alia*, that it would suffer "particularly acute" prejudice if a stay was granted. (D.I. 14 at 3) In light of these filings, I converted the scheduled Rule 16 teleconference into a scheduling teleconference, which was held on May 30, 2012. No Scheduling Order has yet been issued in this case.

On May 24, 2012, while Defendant's motion was pending, the PTO granted the reexamination request, finding that a substantial new question of patentability was raised by at least six prior art references. (D.I. 16, ex. A at 3)

## II.    STANDARD OF REVIEW

A court has discretionary authority to grant a motion to stay. *See Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985); *see also Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings, . . . including the authority to order a stay pending conclusion of a PTO reexamination.") (citations omitted).  This Court has typically considered three factors when deciding a motion to stay:  (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage. *See, e.g., Round Rock Research LLC v. Dole Food Co.*, Civil Action Nos. 11-1239-RGA, 11-1241-RGA, 11-1242-RGA, 2012 WL 1185022, at *1 (D. Del. Apr. 6, 2012); *Vehicle IP, LLC v. Wal-Mart Stores, Inc.*, Civ. No. 10-503-SLR, 2010 WL 4823393, at *1 (D. Del. Nov. 22, 2010).

## III.   DISCUSSION

### A.    Simplification of Issues for Trial

When a patent claim is reexamined by the PTO, there are three possible outcomes—it can be cancelled as unpatentable, it can be confirmed as originally written, or it can be modified. Whatever outcome occurs, there is the potential for the simplification of issues for trial, either by reducing the number of claims at issue, confirming the validity of the surviving claims, or

3

narrowing the scope of a modified claim. *See, e.g., Abbott Diabetes Care, Inc. v. DexCom, Inc.*,

C.A. No. 06-514 GMS, 2007 WL 2892707, at \*5 (D. Del. Sept. 30, 2007) ("'One purpose of the

reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to

facilitate trial of that issue by providing the district court with the expert view of the PTO (when

a claim survives the reexamination proceeding).'") (quoting *Gould v. Control Laser Corp.*, 705

F.2d 1340, 1342 (Fed. Cir. 1983)).  As such, this Court has identified numerous ways that

reexamination can simplify proceedings:

> (1) all prior art presented to the court at trial will have been first
> considered by the PTO with its particular expertise, (2) many
> discovery problems relating to the prior art can be alleviated, (3) if
> patent is declared invalid, the suit will likely be dismissed, (4) the
> outcome of the reexamination may encourage a settlement without
> further involvement of the court, (5) the record of the
> reexamination would probably be entered at trial, reducing the
> complexity and the length of the litigation, (6) issues, defenses, and
> evidence will be more easily limited in pre-trial conferences and
> (7) the cost will likely be reduced both for the parties and the court.

*Gioello Enters. Ltd. v. Mattel, Inc.*, No. C.A. 99-375 GMS, 2001 WL 125340, at \*1 (D. Del. Jan.

29, 2001) (citations omitted).

The reexamination of the '075 Patent certainly has the potential to simplify the issues for

trial.  All of the claims of the sole patent-in-suit are being reexamined, and while the Court

makes no comment on the merit of Defendant's reexamination challenge, it is more likely than

not that at least one of those claims will be either cancelled or modified. (*See, e.g.*, D.I. 11, ex. I

at ¶ 10 (noting that roughly 25% of *ex parte* reexamination requests end with all patent claims

confirmed))  Even if no claims are cancelled, it is more likely than not that one or more of those

claims will be narrowed.  Either way, it is a fair inference that the issues in this case are apt to be

simplified and streamlined to some degree as a result of the reexamination proceedings. *See,*

4

*e.g., Vehicle IP,* 2010 WL 4823393, at *1 (noting, where a reexamination request covered all claims of the patents-in-suit, that there was a real possibility that a "substantial number of the claims" of the patents may be modified or cancelled by the PTO during the pendency of the case); *Cooper Notification, Inc. v. Twitter, Inc.,* Civ. No. 09-865-LPS, 2010 WL 5149351, at *3 (D. Del. Dec. 13, 2010) (same).

Plaintiff argues that granting the motion to stay would not simplify the issues in this case for two reasons. First, Defendant will not be barred from bringing the same arguments from its *ex parte* reexamination in the patent litigation, unlike in *inter partes* reexamination. (D.I. 14 at 5) Second, Plaintiff contends that Defendant's other, non-prior art based challenges would be unaffected by reexamination. (*Id.* at 5–6)

As to Plaintiff's first argument, Defendant could not have brought an *inter partes* reexamination because the '075 Patent was filed before November 29, 1999. *See* 37 C.F.R. § 1.913; (D.I. 1, ex. 1; D.I. 17 at 3). Plaintiff is correct that, should Defendant's arguments as to certain prior art references prove unsuccessful in the PTO, Defendant will have a second chance to assert those prior art references in this Court. But that is always true with regard to *ex parte* reexamination proceedings. Even if Defendant asserts prior art that is not found to invalidate the '075 Patent during the reexamination proceeding, the Court will have the benefit of the PTO's expertise and views on the prior art, which can help focus and streamline the Court's review of issues surrounding that art later in this litigation. *Gioello,* 2001 WL 125340, at *1; *see also Enhanced Sec. Research, LLC v. Cisco Sys., Inc.,* C.A. 09-571-JJF, 2010 WL 2573925, at *2-4 (D. Del. June 25, 2010) (granting motion for stay, over plaintiffs' arguments that *ex parte* reexamination of one patent would not have preclusive effect on any of defendants' claims, due

5

to the likelihood that the reexamination would result in simplification of prior art issues and invalidity defenses that were likely to be raised in the litigation).

Plaintiff's second argument is more compelling. Reexamination may not (and indeed, in most cases, does not) fully resolve all of the claims in patent cases such as this one. Here, for example, the *ex parte* reexamination involves a request identifying a number of U.S. patents that Defendant believes render the claims of the '075 Patent invalid under both 35 U.S.C. §§ 102(b) and 103. (D.I. 11 at 3)  Plaintiff rightly notes that, in addition to a dispute over infringement, among the issues that will not be addressed by the reexamination proceeding are certain other of Defendant's asserted defenses, including those alleging that the patent-in-suit is invalid under (1) Section 101; (2) certain other portions of Section 102; and (3) Section 112.  (D.I. 7 at ¶ 22; D.I. 14 at 6)  As a result, although the PTO's review will have the overall effect of simplifying the matters at issue in this case, if some or all of the claims emerge from reexamination, a not insignificant portion of the case will remain unilluminated by the PTO's review.

In light of these competing considerations, I find this factor to be neutral, neither favoring or disfavoring a stay. *Vehicle IP*, 2010 WL 4823393, at *2 ("Because the issues left for trial do not completely overlap those that are to be resolved upon reexamination, yet each of the claims of the patents in suit are under reexamination, this factor neither favors nor disfavors a stay."); *see also Mission Abstract Data L.L.C. v. Beasley Broad. Grp., Inc.*, Civ. No. 11-176-LPS, 2011 WL 5523315, at *2-3 (D. Del. Nov. 14, 2011); *Cooper Notification, Inc.*, 2010 WL 5149351, at *2-3.

## B.    Status of Litigation

Motions to stay pending reexamination are typically granted in the early stages of patent

6

litigation. *See Abbott Diabetes Care, Inc.*, 2007 WL 2892707, at *5 (staying litigation where no

Rule 16 scheduling conference, scheduling order, or discovery had occurred, and "little time

[had] yet to be invested in the litigation"). This Court is more likely to grant stays early in a case

because they are then more likely to advance judicial efficiency and "maximize the likelihood

that neither the Court nor the parties expend their assets addressing invalid claims." *Gioello*,

2001 WL 125340, at *2 (citation omitted). On the other hand, when a request for reexamination

comes after discovery is complete or nearly complete, and a trial is imminent, a stay is less likely

to be granted. *See, e.g.*, *Belden Techs. Inc. v. Superior Essex Commc'ns LP*, Civ. No. 08-63-

SLR, 2010 WL 3522327, at *2 (D. Del. Sept. 2, 2010) (finding that the status of the litigation

weighed against granting a stay, where discovery in the case was complete as of the filing of the

motion for stay, and trial was scheduled to begin within weeks).

    This case is in its very early stages. No initial disclosures have been exchanged, no

Scheduling Order has been entered, no discovery has occurred, claim construction has not been

briefed, and neither a *Markman* hearing nor a trial date have been set. (D.I. 17 at 1) Defendant

emphasizes that if a stay is denied, it "will be required to devote substantial resources to

litigation procedures such as document collection and production, claim construction, invalidity

contentions, and non-infringement contentions that could be rendered moot based on the

outcome of the reexamination proceeding." (D.I. 11 at 14) Plaintiff does not dispute that the

status of litigation weighs in favor of a stay. (D.I. 14 at 6)

    Because Defendant's motion to stay was filed early in this case, this factor weighs

strongly in favor of a stay.

    **C.    Prejudice**

7

This Court has analyzed whether a plaintiff would suffer undue prejudice (and whether a defendant would gain an unfair tactical advantage) if a stay is granted by examining four factors: (1) the timing of the request for reexamination; (2) the timing of the request for stay;[1] (3) the status of reexamination proceedings; and (4) the relationship of the parties. *Vehicle IP*, 2010 WL 4823393, at *2; *Boston Scientific Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 789 (D. Del. 2011).

> **(1)      Timing of the request for reexamination and the request for stay**

Defendant filed its request for reexamination of the '075 Patent less than six months after the filing of the Complaint, and moved to stay this litigation three weeks later. (D.I. 11 at 2) Defendant emphasizes that its request and motion have been made at the initial stage of the matter, and argues that although there was a nearly seven-month gap between the filing of the Complaint and its request for a stay, that gap is inconsequential. (D.I. 17 at 1) It explains that in this time period, after it filed an Answer, no Rule 16(b) conference was held, no Scheduling Order was entered and nothing of substance occurred in this case. (*Id.*) For its part, Plaintiff argues that the seven-month delay suggests that the motion was filed as little more than a tactical maneuver. (D.I. 14 at 4)

The Court recognizes that in some sense, Defendant's motion seeks a tactical advantage (as do all such motions) because it "would not have been filed but for [Defendant's] belief that the granting of a stay would [be to its] benefit." *Round Rock*, 2012 WL 1185022, at *2. However, the less time that a party waits to file a motion to stay pending reexamination, the less

---

[1]      Given their temporal proximity to each other in this case, the Court will consider the two "timing" factors together.

that the movant's conduct gives rise to an inference that the delay in so doing was impermissibly

tactical. *See id.*; *see also Oracle Corp. v. Parallel Networks, LLP*, Civ. No. 06-414-SLR, 2010

WL 3613851, at *2–3 (D. Del. Sept. 8, 2010) (finding that "there is an inference that [the moving

party sought] an inappropriate tactical advantage" when motion to stay was filed over four years

after suit commenced and over a year after final rejections were issued in both relevant

reexamination proceedings); *St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.*, No.

Civ.A. 01-557JJF, 2003 WL 25283239, at *1 (D. Del. Jan. 30, 2003) (denying motion to stay and

noting that "the fact that the instant motion was filed after the close of discovery and weeks

before the commencement of the scheduled trial date" supported inference of prejudice in the

delay).

       Here, although Defendant did not make its request for reexamination (and its follow-on

request for a stay) immediately after it was served with the Complaint or after it filed its Answer,

it did so mere months thereafter. Its requests were filed at a time when little substantive activity

had yet occurred in this case (thus, it cannot be asserted that the requests were prompted by, for

example, a case event that harmed Defendant's litigation position). As a result, contrary to

Plaintiff's suggestion, I do not think that the timing of these requests suggest that they were

motivated by inappropriate litigation tactics.[2] Instead, they were made in a timely fashion, and

---

    [2]    Underscoring the soundness of this conclusion is the fact that the two cases
Plaintiff cites for the proposition that the "timing of RadioShack's Motion to Stay suggests
tactical, rather than substantive motivations" are very, very dissimilar from the facts of the instant
case. *See Ultra Prods., Inc. v. Antec, Inc.*, No. C 09-04255 RS, 2010 WL 1688538, at *4 (N.D.
Cal. Apr. 26, 2010) (defendant filed motion to stay two years after complaint was filed, at a time
when a scheduling order was entered, and discovery and claim construction preparation were
well underway), *cited in* (D.I. 14 at 4); *Cequent Trailer Prods., Inc. v. Diversi-Tech Corp.*, No.
5:05-CV-74 NAM/GJD, 2008 WL 819750, at *2 (N.D.N.Y Mar. 25, 2008) (defendant filed
motion to stay approximately three years after complaint was filed and after discovery was

therefore, these two "timing" considerations weigh in favor of a stay.

### (2) Status of reexamination proceedings

The reexamination proceedings for the '075 Patent are in their early stages, with the request for reexamination having been granted just a few months ago. Plaintiff argues that a stay in connection with these proceedings would be open-ended, lengthy, and dependent on PTO procedures that are beyond the control of either the parties or this Court. (D.I. 14 at 3) Defendant responds that the PTO will likely complete its first substantive action in reexamination by November 2012, and maintains that "nothing will be lost by staying the case." (D.I. 11 at 4, 9)

Potential delay from reexamination "does not, by itself, amount to undue prejudice." *Wall Corp. v. BondDesk Grp., LLC*, C.A. No. 07-844 GMS, 2009 WL 528564, at *2 (D. Del. Feb. 24, 2009); *see also Enhanced Sec. Research*, 2010 WL 2573925, at *3 ("[T]he Court recognizes that a stay may delay resolution of the litigation, but this alone does not warrant a finding that Plaintiffs will be unduly prejudiced."). That said, this Court has noted that PTO reexaminations can result in lengthy delays, which can hinder a plaintiff's ability to obtain timely resolution regarding its allegations of patent infringement.[3] *See, e.g., Vehicle IP*, 2010 WL 4823393, at *2 ("[R]eexamination is an arduous process fraught with the potential for multiple appeals.") (internal quotation marks and citation omitted).

Here, reexamination of the '075 Patent has just begun. Based on the average pendency

---

completed, summary judgment had been denied, and an impending trial date neared), *cited in* (D.I. 14 at 4).

[3]       The average pendency from filing date to certificate issue date in an *ex parte* reexamination proceeding was 21.5 months as of March 31, 2012. (D.I. 11, ex. G)

from filing date to certificate issue date, reexamination may not be complete until 2014 or later. The prospect of some significant delay, were this case stayed in favor of the PTO proceeding, is real.

It is worth noting, however, that there are two factors suggesting that the reexamination proceedings here—although sure to delay the ultimate resolution of this case—may result in less of a delay than might be otherwise expected. First, it took only three weeks for the PTO to grant Defendant's request, which is faster than the typical grant would occur. *See, e.g.*, Manual of Patent Examining Procedure, Appendix R § 1.515 (noting that a reexamination request must be granted or denied within three months); D.I. 11, ex. G (noting that in 2012, the PTO issued an order granting a request for *ex parte* reexamination in 1.6 months in the year's second quarter and in 1.8 months for the first quarter). If the PTO continues to move at this accelerated pace, it will mitigate the prejudice to Plaintiff from any delay.

Second, this is not the first time that this patent has been reexamined. During the previous reexamination, the entire proceeding took only fifteen months. (*See* D.I. 14, ex. 1 (identifying the date of the prior reexamination request as July 1, 2010, and the date of issuance of the reexamined patent as October 11, 2011)) If the instant reexamination request follows a comparable timeline, then the proceedings will be complete by the end of next summer. Moreover, there may be some efficiency gains as part of this second reexamination, given that the PTO just completed its last review of the '075 Patent less than a year ago.

Ultimately, despite the presence of these potentially mitigating factors, the early status of the reexamination proceedings weighs against granting a stay.

### (3)     Relationship of the Parties

11

The final factor to consider in assessing the potential prejudice to Plaintiff is the relationship of the parties, which typically involves considering whether the parties are direct competitors. *See, e.g., Belden Techs.*, 2010 WL 3522327, at *3 ("Some courts are reluctant to stay proceedings where the parties are direct competitors."); *Boston Scientific Corp.*, 777 F. Supp. 2d at 789 (finding that parties' relationship weighed against a stay where parties were the only two companies marketing the drug-eluting stents at issue in that case).

Ever Win argues that it directly competes with RadioShack. (D.I. 14 at 2)  RadioShack disputes this characterization of the parties' relationship. It notes that while Ever Win is primarily a manufacturer of mobile communications and consumer electronics accessories that sells its products to distributors, RadioShack is a "brick-and-mortar retailer" of consumer electronics devices. (D.I. 17 at 2-3)

To determine whether parties are direct competitors, this Court has looked to actual market participation and to whether there has been a request for preliminary injunction. *See Belden Techs.*, 2010 WL 3522327, at *3; *Boston Scientific Corp.*, 777 F. Supp. 2d at 789. The record before me on this point it somewhat limited, consisting primarily of certain references to the scope of the parties' operations in the pleadings, and to Defendant's citation to a portion of Plaintiff's website. (D.I. 17 at 2-3)  These facts of record, however, do not indicate that the parties are direct competitors.

First, it appears that Plaintiff and Defendant operate primarily in different markets. Defendant serves consumers directly by operating retail locations and providing direct purchase options via its website. (D.I. 1 at ¶ 2; D.I. 17 at 2)  On the other hand, Plaintiff's website does not appear to support direct consumer purchase, nor does Plaintiff appear to maintain any

12

consumer retail locations. (D.I. 16 at 2 & ex. B) Instead, Plaintiff's website notes that it is a

"leading manufacturer for the consumer electronics sector" and that its products are "designed,

built, packaged and shipped" to distributors. (*Id.*) Indeed, other than Ever Win's unsupported

allegation that it directly competes with RadioShack, there is no real evidence that the parties

compete in the same market. *Cf. Brass Smith, LLC v. RPI Indust., Inc.*, Civil No. 09-06344

(NLF/JS), 2010 WL 4444717, at *4 & n. 6 (D.N.J. Nov. 1, 2010) (finding, in reviewing

defendant's motion for a stay pending reexamination of a patent, that plaintiff's allegation that

defendant was a direct competitor was "conclusory," as it was supported by no evidence, for

example, that defendant's operations had a negative impact on plaintiff's sales). Additionally,

Plaintiff never sought a preliminary injunction, which suggests that any prejudice to Plaintiff that

might result from delaying the ultimate resolution of this dispute is not as severe as it contends.[4]

The relationship of the parties thus weighs in favor of a stay.

## IV. CONCLUSION

The potential for simplifying the issues in this case is a neutral factor that neither favors

or disfavors a stay. However, the current status of this litigation strongly favors a stay. And as

to the amount of prejudice associated with the stay request, although the status of the

reexamination proceedings weighs in Plaintiff's favor, the other factors relevant to prejudice

militate in favor of Defendant's position—such that the Court is not persuaded that Plaintiff

would suffer significant undue prejudice if a stay was granted. Taken together, the Court finds

---

[4]     It is also possible that the PTO proceedings could end up strengthening Plaintiff's
position in this litigation. *See Pegasus Dev. Corp. v. DirecTV Inc.*, No. Civ.A. 00-1020-GMS,
2003 WL 21105073, at *2 (D. Del. May 14, 2003) (noting "that if, after reexamination, the
plaintiffs' patents are again upheld, the plaintiffs' rights will only be strengthened, as the
challenger's burden of proof becomes more difficult to sustain").

13

that these factors suggest that the requested stay is warranted.

Therefore, it is ORDERED that:

(1)     Defendant's motion to stay pending reexamination by the PTO (D.I. 10) is

GRANTED.  The proceedings are STAYED from the date of this order until

further notice.

(2)     The parties shall advise the Court of any final decision that results from the PTO's

reexamination of the '075 Patent.

(3)     On January 31, 2013, the parties shall file a joint report outlining the status of the

reexamination proceedings, and shall file a similar report every 90 days thereafter.

Dated: October 9, 2012

_____
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

14